UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

CHRISTOPHER M. WOOTEN

VERSUS

OFFICER HARRELL, ET AL.

CIVIL ACTION

23-368-SDD-SDJ

## RULING

This matter comes before the Court on the *Motion to Dismiss*[1] filed by Defendant City of Baton Rouge (the "City") and the *Motion to Dismiss*[2] jointly filed by Defendant Officers Bouriaque and Harrell, and Sergeant Smith (collectively, the "Defendants"). Plaintiff Christopher Wooten ("Wooten" or "Plaintiff") filed an *Opposition*[3] to both motions. The Defendants filed replies.[4] For the reasons that follow, the Court will grant the motions in part and deny the motions in part.

I.    BACKGROUND AND PROCEDURAL FACTS

Plaintiff's claims arise out of a car collision on June 23, 2022. Plaintiff pleads the following facts: He was driving into a Taco Bell parking lot, when he was rear ended by Ashuntai Harrell ("Ashuntai"),[5] who was driving a Honda civic. Plaintiff exited the car to speak with Ashuntai when a blue car "pulled up to the scene."[6] Two men exited this

---

[1] Rec. Doc. 9.
[2] Rec. Doc. 29.
[3] Rec. Docs. 10, 34.
[4] Rec. Docs. 17, 38.
[5] The driver's first name will be used as an abbreviation to avoid confusion between Ashuntai Harrell and Officer Harrell, one of the Defendants and Ashuntai's sister. Rec. Doc.1, p. 3.
[6] Rec. Doc. 1, p. 3.

Page **1** of **20**

vehicle and confronted Plaintiff, and one man drew a handgun and threatened Plaintiff.[7] Plaintiff asked his passenger to call the police.[8] Officer Harrell responded to the scene. Officer Harrell is Ashuntai's sister.[9] Officer Harrell handcuffed Plaintiff and placed him in the back of her patrol car.[10] Officer Harrell did not arrest the men who approached Plaintiff.[11] Plaintiff remained in the vehicle "with the windows rolled up in the heat of the late afternoon" while Officer Harrell conducted an investigation.[12] Officer Harrell spoke to Wooten's passenger, who informed her that Wooten was shouting at Ashuntai.[13] Officer Harrell asked the passenger if Plaintiff had "done anything else and the passenger replied that Wooten had not."[14] Officer Harrell then told Plaintiff that he was being arrested for property damage because Plaintiff's passenger informed Officer Harrell that "he saw Wooten kick the Honda civic."[15] Plaintiff alleges that Officer Harrel was lying about this statement.[16]

Plaintiff alleges he began "sweating profusely and breathing heavily."[17] He informed Officer Harrell that he was diabetic and hypoglycemic and asked for a drink.[18] Officer Harrell refused. Plaintiff claims that Officer Harrell then switched off the audio of her body camera and walked over to Ashuntai. She then proceeded to make a phone call.[19] Once Officer Harrell returned to the patrol car, she turned the audio of her body

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id* at p. 4.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*

camera back on and asked Plaintiff if he needed Emergency Medical Services ("EMS"). Once he affirmed, she called EMS.[20] A second patrol car arrived at the scene. Plaintiff claims Sergeant Smith drove this vehicle and began to discuss the incident with Officer Harrell.[21] Shortly thereafter, Office Bouriaque arrived. Sergeant Smith and Officer Bouriaque spoke and "acknowledged that [Officer] Harrell had been on the phone with her sister, [Ashuntai], before the investigation began."[22] The officers agreed Officer Bouriaque would write the report. Officer Bouriaque asked Sergeant Smith what the charges were, and Sergeant Smith informed him that "it was simple criminal damage to property."[23] Sergeant Smith explained that this was "only a misdemeanor and that the jail 'wouldn't take him.'"[24] Officer Bouriaque replied that Sergeant Smith "could 'find a way' to put Wooten in jail."[25] Plaintiff claims that "all three police [officers] team[ed] up to fabricate a felony to jail Wooten and punish him for yelling at a police officer's relative."[26]

EMS eventually arrived and found Plaintiff was stable.[27] Thereafter, Plaintiff was booked by the Baton Rouge Police Department. He was released on bond for $2,500.[28] Plaintiff was charged with simple criminal damage to property under Louisiana Revised Statute § 14:56 for allegedly causing damage to Ashuntai's car.[29] Plaintiff claims that the alleged damages for this crime totaled $1,500, "which is barely above the threshold required for a felony charge under the statute."[30] Plaintiff alleges that after the officers'

---

[20] *Id* at pp. 4–5.
[21] *Id* at p. 5.
[22] *Id*.
[23] *Id*.
[24] *Id*.
[25] *Id*.
[26] *Id*.
[27] *Id* at p. 6.
[28] *Id*.
[29] *Id*.
[30] *Id*.

body camera footage was reviewed, the charges against him were dropped.[31]

Plaintiff seeks relief contending Officer Harrell, Officer Bouriaque, and Sergeant Smith are liable in their individual capacities for false arrest, excessive force, fabrication of evidence, and malicious prosecution. Additionally, he asserts that Officer Harrell, Officer Bouriaque, and Sergeant Smith are liable under state law for defamation and malicious prosecution. Plaintiff claims that the City is vicariously liable for the acts of Officer Harrell, Officer Bouriaque, and Sergeant Smith.[32] All Defendants now move to dismiss.[33]

## II. LAW AND ANALYSIS

### A. Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[34] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[35] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[36]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

---

[31] The charges were dropped on November 15, 2022. *Id.*
[32] Rec. Doc. 1.
[33] Rec. Docs. 9, 29.
[34] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[35] *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[36] *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[37] A complaint is also insufficient if it merely "tenders 'naked assertions' devoid of 'further factual enhancement.'"[38] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[39] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[40] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[41] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[42]

## B. Exhibits in Opposition

Plaintiff attached numerous exhibits to his Opposition to the City's motion, including policies and orders from the police department and the City, as well as a screenshot of the weather forecast in Baton Rouge on the date of the arrest. Additionally, Plaintiff attached the video footage from Officer Harrell's body camera.[43] Plaintiff also filed a motion for leave to submit additional videos from the day of the arrest, and this motion for leave was granted.[44] The City objects to the consideration of these exhibits.[45]

---

[37] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).
[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and brackets omitted).
[39] *Id.*
[40] *Id.*
[41] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).
[42] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[43] Rec. Doc. 10.
[44] Rec. Doc. 36.
[45] Rec. Doc. 17, pp. 8–10.

The Court may consider documents attached to an opposition "when the documents are referred to in the pleadings and are central to a plaintiff's claim."[46] The Court finds that the only "document" referred to in the pleadings is the video from Officer Harrell's body camera. In *Ambler v. Williamson County, Texas*, the Western District of Texas explained that a video will not necessarily be transformed into a document merely because a video captures events complained of in the complaint.[47] A video must be incorporated into the complaint by reference. The district court denied the consideration of a video exhibit because it was not referenced in the complaint and the video only captured part of the underlying incident which "'merely provide[d] one (1) officer's perspective of the incident at issue.'"[48] The Western District of Texas found that the video was not central to that plaintiff's claims.[49] Here, the video from Officer Harrell's body camera depicts Officer Harrell's vantage point of some, but not all of the events that transpired that day. Plaintiff has plead factual allegations about two other officers, and a conversation between these two officers.[50] So, although the video is mentioned in the Complaint, the footage from Officer Harrell's body camera captures only limited parts of the underlying incident.

Accordingly, the Court will limit its consideration of the motions to the four corners of the Complaint.

---

[46] *Harris v. La. Through La. Dep't of Pub. Safety & Corr.*, 2023 WL 6368216, at *3 (M.D. La. Sept. 28, 2023) (internal citations omitted).
[47] 2021 WL 769667, at *3 (W.D. Tex. Feb. 25, 2021).
[48] *Id* at *4.
[49] *Id*.
[50] Rec. Doc. 1, p. 5.

## C. Section 1983 Generally

The Civil Rights Act of 1964, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law.[51] It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .[52]

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[53]

To prevail on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.[54] A § 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.[55]

### 1. Qualified Immunity – Individual Capacity Claims

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

---

[51] See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 82 (1984); Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19 (1981).
[52] 42 U.S.C. § 1983.
[53] Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)); accord Graham v. Connor, 490 U.S. 386, 393–94 (1989); City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985); Jackson v. City of Atlanta, 73 F.3d 60, 63 (5th Cir. 1996); Young v. City of Killeen, 775 F.2d 1349, 1352 (5th Cir. 1985).
[54] See Blessing v. Freestone, 520 U.S. 329, 340 (1997); Daniels v. Williams, 474 U.S. 327, 330 (1986); Augustine v. Doe, 740 F.2d 322, 324–25 (5th Cir. 1984).
[55] See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); Fee v. Herndon, 900 F.2d 804, 807 (5th Cir. 1990); Jacquez v. Procunier, 801 F.2d 789, 793 (5th Cir. 1986); Angel v. City of Fairfield, 793 F.2d 737, 739 (5th Cir. 1986).

reasonably."[56] In striking this balance, qualified immunity shields "government officials performing discretionary functions" from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[57]

When a public official asserts the defense of qualified immunity, the plaintiff has the burden of establishing a constitutional violation and overcoming the defense.[58] In the motion to dismiss context, the factual allegations of the Complaint must allege enough for the Court to find that the qualified immunity defense may plausibly be overcome.[59] To meet this burden, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."[60] The court has discretion to decide these prongs in any order.[61]

At the 12(b)(6) stage, the court must determine whether, taking the alleged facts in the light most favorable to the plaintiff, the plaintiff has alleged that the defendant's conduct violated a constitutional right.[62] For the second step, "[f]or a right to be clearly established, 'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"[63] "In other words, existing

---

[56] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[57] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").
[58] *Jackson v. City of Hearne*, 959 F.3d 194, 201 (5th Cir. 2020) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).
[59] *See Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.")
[60] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (internal quotation marks omitted).
[61] *Jackson*, 959 F.3d at 200.
[62] *Morgan*, 659 F.3d at 384; *Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009).
[63] *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (internal brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

precedent must have placed the statutory or constitutional question beyond debate."[64] If a plaintiff alleges that an official's conduct violated a clearly established right, the court must then determine "whether the official's conduct was objectively reasonable under the law at the time of the incident."[65]

An official's conduct is not objectively unreasonable "unless all reasonable officials in the [official's] circumstances would have then known that the [official's] conduct violated the plaintiff's rights."[66] When denying qualified immunity, a court must point to "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity."[67]

When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'"[68] The plaintiff must "assert facts which, if true, would overcome the defense of qualified immunity."[69] A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[70]

Plaintiff sues Officers Bouriaque and Harrell, and Sergeant Smith in their individual capacities for false arrest, excessive force, and malicious prosecution. Defendants raise the qualified immunity defense for each claim.

---

[64] *Jackson*, 959 F.3d at 201 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).
[65] *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005); *see also Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).
[66] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015).
[67] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).
[68] *McClendon*, 305 F.3d at 323 (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).
[69] *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014).
[70] *Backe*, 691 F.3d at 648.

### 2. False Arrest

To prevail on a false arrest claim, a plaintiff must show that the officer did not have probable cause to arrest him.[71] "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"[72] "This is necessarily a 'fact-specific. . .inquiry,' and the Court has cautioned that it requires an inquiry into the specific situation confronting the public officials."[73]

Plaintiff claims that Officer Harrell, Officer Bouriaque, and Sergeant Smith lacked probable cause to arrest Plaintiff because while the Defendants hold evidence that Plaintiff yelled at Ashuntai, they do not have any evidence that Plaintiff kicked Ashuntai's car.[74] The Defendants assert the affirmative defense of qualified immunity. The Court finds that Plaintiff has plead facts sufficient to survive the motions to dismiss and raise a genuine issue as to the illegality of the Defendants' conduct to defeat a qualified immunity defense.

### a) Officer Harrell

Plaintiff alleges that when Officer Harrell questioned the passenger about the incident, the passenger told Officer Harrell that Plaintiff yelled at Ashuntai, but he did not do anything else to her or her vehicle.[75] Plaintiff alleges that Officer Harrell fabricated the passenger's statement by telling Plaintiff that his passenger stated that he saw Plaintiff

---

[71] *Evans v. City of Meridian Mississippi*, 630 Fed. App'x 312, 315 (5th Cir. 2015).
[72] *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)).
[73] *Torns v. City of Jackson*, 622 Fed. Appx. 414, 417 (5th Cir. 2015) (quoting *Melear v. Spears*, 862 F.2d 1177, 1184 (5th Cir. 1989)).
[74] Rec. Doc. 34, p. 7–8.
[75] Rec. Doc. 1, p. 4.

kick Ashuntai's vehicle.[76] Moreover, Plaintiff claims that Officer Harrell turned off the audio of her body camera when speaking to her sister, Ashuntai, about the incident and only turned the audio back on when she returned to her patrol car to ask Plaintiff about EMS.[77] The City argues Plaintiff has not plead a lack of probable cause because "there is no allegation that the victim/complainant Ashuntai did not tell the officers that Wooten was not the person who kicked and damaged her car's door."[78] But, the Court does not find this point persuasive. Plaintiff alleges that he was placed under arrest immediately following Officer Harrell's conversation with his passenger.[79] Taking these allegations as true, Plaintiff has sufficiently plead facts that Officer Harrell lacked probable cause. And as the Court is required to consider the specific situation at issue, Plaintiff's allegations raise the plausible inference that Officer Harrell's decision to turn off the audio of her body camera when speaking to Ashuntai, her sister, was in an effort to shield a clear conflict of interest, which raises further doubt as to probable cause.

With respect to a warrantless arrest, "officers are entitled to qualified immunity unless there was not probable cause for the arrest *and* a reasonable officer in their position could not have concluded that there was probable cause for the arrest."[80] Plaintiff alleges that Officer Harrell fabricated the evidence she received from Plaintiff's passenger to arrest him. Plaintiff has alleged facts that plausibly show a lack of probable cause. A reasonable officer would not conclude there was probable cause under these

---

[76] *Id.*
[77] *Id* at pp. 4–5.
[78] Rec. Doc. 9-2, p. 10.
[79] Rec. Doc. 1, p. 4.
[80] *Bone v. Dunnaway*, 2015 WL 5013871, at *5 (E.D. La. Aug. 24, 2015) (quoting *Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, 198 (5th Cir.2015) (emphasis added in original), aff'd in part, vacated in part, remanded, 657 F. App'x 258 (5th Cir. 2016)).

circumstances. Accordingly, Plaintiff allegations overcome Defendants' qualified immunity defense and his false arrest claim against Officer Harrell survives.

### b) Sergeant Smith and Officer Bouriaque

Plaintiff's false arrest claims against Sergeant Smith and Officer Bouriaque also survive. Plaintiff claims that when Sergeant Smith informed Officer Bouriaque of the charges, Sergeant Smith stated that "the jail 'wouldn't take him'" for this crime, a misdemeanor.[81] Officer Bouriaque replied they could "find a way" to place Plaintiff in jail.[82] The City contends Plaintiff failed to allege "that Bouriaque had a reason to disbelieve Officer Harrell's account at the time of the June 2022 arrest."[83] Additionally, the Defendant Officers argue that Plaintiff was required to articulate how any alleged biased behavior by Officer Harrell extended to Officer Bouriaque and Sergeant Smith.[84] The Court finds neither argument persuasive. Plaintiff does not need to plead more facts relating to these arguments because the alleged conversation between Sergeant Smith and Officer Bouriaque is sufficient to raise the inference that there was not a crime committed to compel arrest. Accepting Plaintiff's allegations as true, Sergeant Smith knew the charges were insufficient to place Plaintiff in jail, which led to Officer Bouriaque suggesting that they come up with a maneuver to place him in jail anyway. This is sufficient to plead a constitutional violation. Thus, the Court considers whether Officer Bouriaque's and Sergeant Smith's actions were objectively reasonable to assert the qualified immunity defense. Plaintiff has plead facts alleging the officer and sergeant schemed to

---

[81] *Id* at p. 5.
[82] *Id.*
[83] Rec. Doc. 9-2, p. 9.
[84] Rec. Doc. 29-2, p. 8.

unwarrantedly place Plaintiff in jail. Under these facts, which are assumed true, no reasonable officer would conclude that there was probable cause to make a felony arrest.

The motions to dismiss with respect to Plaintiff's false arrest claim are denied.

### 3. Excessive Force

"To prevail on an excessive-force claim, a plaintiff must show (1) [an] injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[85] Excessive force claims are necessarily fact intensive, and "whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'"[86] Factors the Court should consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[87] Additionally, "[t]he extent of the injury required to demonstrate that the force used was excessive depends on the context in which the injury occurs.'"[88] Finally, excessive force and false arrest claims are "'separate and distinct,'" such that an excessive force claim must be analyzed "'without regard to whether the arrest itself was justified.'"[89]

The Court finds that the motions to dismiss should be granted on the excessive force claim because Plaintiff has failed to plead facts of an injury. Plaintiff claims that, while waiting in the sealed patrol car, he was "sweating profusely and breathing heavily"

---

[85] *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 728 (5th Cir. 2018) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)).
[86] *Deville v. Mercantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))
[87] *Id.*
[88] *Goffney v. Sauceda*, 340 F. App'x 181, 184 (5th Cir. 2009) (citing *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).
[89] *Thomas v. Gulotta*, 2017 WL 379449, at *7 (M.D. La. Jan. 26, 2017) (quoting *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007)).

and became "visually disoriented."[90] While Plaintiff eventually confirmed with Officer Harrell that he needed EMS, once EMS arrived, Plaintiff alleges that he was found stable.[91] These facts show that, even if Plaintiff suffered an injury, it was at most *de minimis*.[92] Both motions are granted as to the excessive force claim without prejudice. The Court will allow Plaintiff to amend his Complaint to cure the claim's deficiencies, if he can.[93]

### 4. Malicious Prosecution

In the Fifth Circuit, a plaintiff must prove the following six elements to prevail on a constitutionalized malicious prosecution claim: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.[94] Additionally, a plaintiff must also prove the "threshold element[s] of an unlawful Fourth Amendment seizure."[95] "[I]f the prosecution is supported by probable cause on at least one charge, then a malicious prosecution claim cannot move forward."[96]

---

[90] Rec. Doc. 1, p. 7.
[91] *Id* at p. 6.
[92] *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (explaining the injury "must be more than de minimis injury" and finding no excessive force where Plaintiff claimed handcuffs were on too tightly, and her right wrist swelled); *see also Ross v. Simmons*, 2015 WL 636004, at *1 (S.D. Tex. Feb. 12, 2015) (dismissing an excessive force claim because "[a]n Eighth Amendment claim for use of excessive force requires proof of some injury resulting from the use of excessive force") (citation omitted); *Clark v. City of Burleson*, 2020 WL 635842, at *4 (N.D. Tex. Feb. 11, 2020) (dismissing excessive force claim where the alleged use of force, was removing a plaintiff from his bed, pointing a taser at him, and handcuffing him because the injury was "de minimis"), aff'd sub nom. *Clark v. Thompson*, 850 F. App'x 203 (5th Cir. 2021).
[93] "[T]he Federal Rules of Civil Procedure provide that 'leave to amend shall be freely given when justice so requires.' Moreover, 'courts should ordinarily grant a plaintiff **at least one** opportunity to amend before dismissing a complaint with prejudice for failure to state a claim.'" *Mocsary v. Ard*, 2018 WL 4608485, at *13 (M.D. La. Sept. 25, 2018) (internal citations omitted).
[94] *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023).
[95] *Id.*
[96] *Id* at n.15.

The elements of a § 1983 malicious prosecution claim and the elements of a Louisiana state malicious prosecution claim are coextensive.[97] Accordingly, the Court can simultaneously analyze whether there has been a violation of a constitutionally protected right along with the state law malicious prosecution claim.

Here, Defendants argue Plaintiff cannot satisfy the fourth and fifth elements of his malicious prosecution claim under state or federal law.[98] The Court disagrees. When accepting Plaintiff's allegations as fact, a criminal proceeding did commence and the criminal proceeding was the direct result of his arrest by Defendants, satisfying the first two elements. According to Plaintiff, the State then voluntarily dismissed the charges against him after reviewing the body camera footage.[99] Under Louisiana law, "voluntary dismissal of a prosecution creates rebuttable presumptions of (1) malice and (2) lack of probable cause."[100] As such, Plaintiff plausibly plead the third, fourth, and fifth elements of his state malicious prosecution claim. Finally, Plaintiff claims he has suffered economic damages, physical pain, mental anguish, as well as damage to his reputation.[101] This satisfies the last element, and therefore Plaintiff has sufficiently plead a cause of action for malicious prosecution under state law. With respect to his constitutional malicious prosecution claim, the Court finds that Plaintiff has also sufficiently plead allegations to survive the 12(b)(6) motion. The analysis of the state and § 1983 malicious prosecution claim is the same, but it remains unclear whether the rebuttable presumption that is created by a voluntary dismissal under state law extends to the constitutional claim.

---

[97] *Id* at 279.
[98] Rec. Doc. 9-2, pp. 18–19.
[99] Rec. Doc. 1, p. 6.
[100] *Barra v. Boudreaux*, 2020 WL 1695124, at *6 (W.D. La. Apr. 6, 2020) (citing *Smith v. City Bank & Tr. Co.*, 271 So. 3d 263, 267 (La. App. 3 Cir. 5/1/19)).
[101] Rec. Doc. 1, pp. 8–9.

Accordingly, Plaintiff must plead facts to show malice and lack of probable cause under the § 1983 malicious prosecution claim. "Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights."[102] As this Court has held Plaintiff sufficiently plead lack of probable cause for his arrest Plaintiff's pleadings plausibly allege elements of the § 1983 malicious prosecution claim.

The Court must still consider whether the Defendants' actions "were objectively reasonable in light of clearly established law at the time of the alleged misconduct."[103] Louisiana state law, at least, has always recognized that "malicious prosecution has occurred when there was no probable cause to arrest an individual."[104] Moreover, the federal and state law has always been clear that officers cannot arrest someone without probable cause.[105] So, assuming Plaintiff's allegations are true, Defendants' arrest of Plaintiff without probable cause, leading to a warrantless criminal proceeding against him, was objectively unreasonable.[106] Accordingly, Defendants' motions to dismiss Plaintiff's state and federal malicious prosecution claims on the grounds of qualified immunity are denied.

---

[102] *Bledsoe v. Willis*, 665 F. Supp. 3d 810, 818 (W.D. La. 2023) (citing *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 7/28/87), aff'd, 2023 WL 8184814 (5th Cir. Nov. 27, 2023).
[103] *Id* (citing *Saucier v. Katz*, 522 U.S. 194, 201 (2001)).
[104] *Id* at 821 (citations omitted).
[105] *Id*.
[106] *See id* at 820–21 (The Court explained that the Fifth Circuit case law on malicious prosecution has "been in flux" but Louisiana state law makes it clear that "malicious prosecution has occurred when there was no probable cause to arrest an individual. . . ." Moreover, the Court found that even if the officers did not have "sufficient notice that their behavior was objectively unreasonable or unlawful with regard to § 1983 malicious prosecution", the law has always been clear that arresting someone without probable cause is in "direct violation of the law" and therefore qualified immunity could not defeat the plaintiff's federal malicious prosecution claim.).

### 5. Due Process Claim for Fabrication of Evidence

Finally, Plaintiff brings a Fourth Amendment due process claim against Officers Bouriaque and Harrell, and Sergeant Smith. He specifically alleges that "all three police [officers] team[ed] up to fabricate a felony to jail Wooten and punish him for yelling at a police officer's relative."[107] Defendants do not address this claim until their Reply memorandum.[108] Because of this, Plaintiff argues his claims should survive the motions to dismiss.[109] It is well-settled in the Fifth Circuit that "arguments raised for the first time in a reply brief are generally waived."[110] Thus, the Court agrees with Plaintiff. Because Defendants only address this claim for the first time in their reply briefs, they are not properly before the Court. The due process claim survives.

### D. State Law Claims

#### 1. Defamation

Plaintiff alleges the Defendants defamed him.[111] "Under Louisiana law a plaintiff must show four elements to prove defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[112] "If even one of the required elements of the tort is lacking, the cause of action fails."[113]

---

[107] Rec. Doc. 1, p. 5.
[108] Rec. Doc. 38, pp. 6–7.
[109] Rec. Doc. 34, p. 11–12.
[110] See Royal Alice Properties, LLC v. AMAG, Inc., 2022 WL 278926, at *2 (E.D. La. Jan. 31, 2022) (The district court declined to consider the petitioners' argument on a party's motion to intervene because "it was not properly before the Court.") (internal citation omitted), appeal dismissed sub nom. Matter of Royal Alice Properties, L.L.C., 2022 WL 3139011 (5th Cir. Mar. 30, 2022).
[111] Rec. Doc. 1, p. 8.
[112] Bellard v. Gautreaux, 675 F.3d 454, 464 (5th Cir. 2012) (citing Costello v. Hardy, 864 So.2d 129, 139 (La. 2004)).
[113] Costello, 864 So. 2d at 140.

This Court has previously held that under Louisiana law, false accusation of a crime is defamation per se.[114] Here, Plaintiff claims that the City and the officers have falsely accused him of property damage and publicized this in a court record, resulting in damage to his reputation and economic damages related to his profession.[115] Defendants seek dismissal arguing they are entitled to qualified privilege under Louisiana law. Determining whether a qualified privilege exists involves a two-step process. "First, it must be determined whether the attending circumstances of a communication occasion a qualified privilege."[116] Second, the Court determines "whether the privilege was abused, which requires that the grounds for abuse—malice or lack of good faith—be examined."[117] "While the first step is generally determined by the court as a matter of law, the second step of determining abuse of conditional privilege or malice is generally a fact question for the jury 'unless only one conclusion can be drawn from the evidence.'"[118] When "there is probable cause for [an] arrest, Louisiana law affords police officers a qualified privilege against defamation actions related to reports of the arrest and the charges on which the arrest was based."[119]

The Court finds that Plaintiff sufficiently plead lack of probable cause for his arrest, therefore, the attending circumstances do not occasion this privilege. Accordingly, Plaintiff's defamation claim survives the 12(b)(6) motions.

---

[114] *Williams v. Town of Clinton*, 2024 WL 72645, at *4 (M.D. La. Jan. 5, 2024) ("Plaintiff responds that his defamation claim passes muster because, under Louisiana law, 'false accusation of a crime' is 'defamation per se.' Certainty, the caselaw supports this view.") (citing *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196, 198 (La. 1980) (internal citations omitted)).
[115] Rec. Doc. 1, p. 8.
[116] *Ioppolo v. Rumana*, 581 F. App'x 321, 332 (5th Cir. 2014) (quoting *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 682 (La. 7/10/06)).
[117] *Id.*
[118] *Id.*
[119] *Robertson v. City of Shreveport*, 2018 WL 1769373, at *3 (W.D. La. Apr. 12, 2018) (citing *Thorn v. McGary*, 684 Fed. Appx. 430, 435 (5th Cir. 2017)).

2. **Vicarious Liability**

Under La. Civ. Code art. 2320, "an employer is subject to vicarious liability for the tortious conduct of his employee, irrespective of his title, while acting within the course and scope of employment."[120] Governmental entities "do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer."[121] The Louisiana Supreme Court has "stated that an employee's conduct is generally within the course and scope of his employment if the conduct is of the character and nature that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[122]

Plaintiff alleges the City should be held vicariously liable for the acts of Officer Harrell, Officer Bouriaque, and Sergeant Smith because these officers were acting in the course and scope of their employment during the arrest.[123] Because the Court has found that Plaintiff has stated claims against Officer Harrell, Officer Bouriaque, and Sergeant Smith for malicious prosecution and defamation under Louisiana law, there are potentially culpable employees for which the City could be held vicariously liable. Thus, the City's motion is denied as to the claims of vicarious liability for the state law claims.

III. **CONCLUSION**

Accordingly, the Motions to Dismiss[124] filed by the City and the officers are hereby **GRANTED in part** and **DENIED in part**. Plaintiff's § 1983 claims of false arrest, due

---

[120] *Brasseaux v. Town of Mamou*, 752 So. 2d 815, 821 (La. 2000).
[121] *Deville v. Marcantel*, 567 F.3d 156, 174 (5th Cir. 2009) (citing *Brasseaux*, 752 So. 2d at 815); *see also Bussey v. Dillard Dep't. Stores, Inc.*, 984 So. 2d 781, 784 (La. App. 1 Cir. 2008) ("[V]icarious liability [under art. 2320] applies to law enforcement employers as well." (internal citations omitted)).
[122] *Brasseaux*, 752 So. 2d at 820 (internal citations omitted).
[123] Rec. Doc. 1, pp. 2–3.
[124] Rec. Docs. 9, 29.

process/fabrication of evidence, and malicious prosecution survive against Officer Harrell, Officer Bouriaque, and Sergeant Smith. Additionally, Plaintiff's state law claims of defamation, malicious prosecution, and vicarious liability survive against Officer Harrell, Officer Bouriaque, Sergeant Smith, and the City. Plaintiff's § 1983 excessive force claim is hereby dismissed without prejudice. Plaintiff will have twenty-one (21) days from the date of this *Ruling* to amend his Complaint[125] with respect to the excessive force claim to cure the deficiencies set forth above.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this 24 Day, April, 2024.

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[125] Rec. Doc. 1.