**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**


CHRISTOPHER M. WOOTEN

VERSUS

OFFICER HARRELL, ET AL.

CIVIL ACTION

23-368-SDD-SDJ

**RULING**

This matter is before the Court on the Motion for Summary Judgment[1] filed by Officer Caruntai Harrell, Officer Caleb Bouriaque, Sergeant Romey Smith, and the City of Baton Rouge/Parish of East Baton Rouge (collectively, "Defendants"). Plaintiff, Christopher M. Wooten ("Plaintiff" or "Wooten") filed an Opposition,[2] and Defendants filed a Reply.[3] For the reasons which follow, the Motion will be granted in part and denied in part.

I.    **BACKGROUND**

This case arises out of a roadway dispute which resulted in Plaintiff being arrested on charges of Simple Criminal Damage to Property under Louisiana Revised Statute 14:56. Plaintiff claims there was no probable cause for his arrest and asserts both federal and state law claims.

The subject roadway dispute occurred on June 23, 2022, between Plaintiff and Ashuntai Harrell ("Ashuntai").[4] Ashuntai called 911 and reported that "a man just got out

---

[1] Rec. Doc. 49.
[2] Rec. Doc. 53.
[3] Rec. Doc. 59.
[4] Ashuntai Harrell is the sister of Officer Caruntai Harrell, one of the Defendants in this matter. To avoid confusion, the Court will refer to Ashuntai Harrell by her first name.

in the middle of the street and kicked my car," and that the man was "acting crazy and driving belligerent."[5]

Coincidentally, leading up to and during this incident, Ashuntai was on the phone with her sister, Defendant Officer Caruntai Harrell ("Officer Harrell").[6] Officer Harrell had just gotten off duty for the day and was en route to her home in uniform and in her patrol car.[7] Officer Harrell testified that while on the phone with Ashuntai, she heard arguing and a "big thump."[8] Officer Harrell happened to be driving on the same roadway as Ashuntai at the time.[9] Officer Harrell came upon the scene, observed Ashuntai arguing with Plaintiff, and stopped to intervene.[10] Officer Harrell handcuffed Plaintiff, put him in her patrol unit, and called dispatch for an additional unit.[11]

The footage from Officer Harrell's body-worn camera ("bodycam") shows the following subsequent events which took place in a motel parking lot.[12] At 7:19 p.m., Officer Harrell approaches a witness who had been a passenger in Plaintiff's vehicle when the incident occurred. She asks the passenger what happened. The passenger states that Plaintiff's and Ashuntai's vehicles "almost hit each other," and Plaintiff "got out the truck and started yelling at [Ashuntai]. That's all I know." Officer Harrell then walks over to Plaintiff, who was still detained in her patrol car. She Mirandizes Plaintiff and tells him that "your buddy over here told me you got out the car and kicked the door." Officer Harrell asks Plaintiff what happened. He states that after Ashuntai almost hit him, both vehicles

---

[5] Rec. Doc. 49-16.
[6] Rec. Doc. 53-5, p. 9.
[7] *Id.* at pp. 9–11.
[8] *Id.* at p. 10.
[9] *Id.* at pp. 9–11.
[10] *Id.* at p. 11.
[11] *Id.*
[12] Rec. Doc. 49-13.

pulled into the parking lot. Then, Plaintiff states that someone in another car pulled up behind them and pulled a gun on Plaintiff. Officer Harrell then enters the driver's seat of the patrol car. During the next few minutes, Plaintiff repeatedly denies kicking Ashuntai's car and repeats his claim that someone in a third car had pulled up and brandished a firearm. At 7:27 p.m., Officer Harrell manually mutes her body-worn camera. About a minute later, with the camera still muted, Officer Harrell walks over to Ashuntai and converses with her for roughly thirty to forty seconds. Officer Harrell then returns to the driver's seat of her patrol car, and her camera remains muted for roughly the next twelve minutes until she manually unmutes it.

Defendant Officer Caleb Bouriaque ("Officer Bouriaque") was the next officer to arrive on scene. There is no bodycam footage from Officer Bouriaque. In his deposition, Officer Bouriaque testified that his bodycam was running during his investigation but "there might have been some sort of a software malfunction" because he could not locate the footage.[13]

Defendant Seargent Romey Smith ("Seargent Smith") arrived shortly after Officer Bouriaque. A two-minute video from Seargent Smith's bodycam shows the following.[14] Officer Bouriaque explains to Seargent Smith that, apparently, Officer Harrell was on the phone with her sister, Ashuntai, when someone pulled in front of Ashuntai, cutting her off. Officer Bouriaque further states to Seargent Smith that Ashuntai honked at the individual, an altercation ensued, and the individual kicked Ashuntai's car "and put a dent in it." Seargent Smith tells Officer Bouriaque that Officer Harrell cannot handle the case because of the involvement of her sister. Seargent Smith asks Officer Bouriaque whether

---

[13] Rec. Doc. 53-6, p. 15.
[14] Rec. Doc. 49-14.

he plans to charge or book Plaintiff, who at this point is still in Officer Harrell's patrol car. The following exchange ensues:

> **Officer Bouriaque**: "It's a misdemeanor."
>
> **Seargent Smith**: "You can put him in jail for that if you want to, that's up to you though."
>
> **Officer Bouriaque**: "I don't think they'll take him for simple criminal damage to property."
>
> **Seargent Smith**: "I'm pretty sure you can find a way."

Officer Bouriaque wrote an Incident Report[15] which can be summarized as follows. Upon arrival at the scene, Officer Bouriaque talked to Ashuntai, who explained that after she honked at Plaintiff for almost striking her vehicle, Plaintiff exited his vehicle and attempted to reach into her car through a cracked window. Plaintiff then kicked Ashuntai's back passenger door, causing a large dent. Officer Bouriaque estimated the damage to the door at approximately $1,500. Ashuntai told Officer Bouriaque that "[t]here were also other subjects on scene yelling at the subject for attacking [her]." Officer Bouriaque then made contact with Plaintiff and Mirandized him. Plaintiff told Officer Bouriaque that Ashuntai almost rear-ended him, and when he exited his vehicle to confront her, "two black male subjects in a blue car behind Ashuntai's pulled a gun on him and asked him why he was trying to assault a female." Plaintiff told Officer Bouriaque he did not kick the door. Officer Bouriaque placed Plaintiff under arrest for Simple Criminal Damage to Property under La. R.S. 14:56, and Plaintiff was booked into East Baton Rouge Parish Prison.

---

[15] Rec. Doc. 49-7, p. 2.

The State of Louisiana filed a Bill of Information against Plaintiff on August 15, 2023.[16] However, the state dismissed the charge on November 15, 2022.[17]

Plaintiff's Complaint enumerates federal claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, fabrication of evidence, and excessive force, as well as state law claims for defamation and malicious prosecution.[18] Plaintiff sues Officer Harrell, Officer Bouriaque, and Seargent Smith in their individual capacities, and alleges the City of Baton Rouge/Parish of East Baton Rouge (the "City/Parish") is vicariously liable for the state law claims. Defendants previously moved to dismiss for failure to state a claim.[19] The Court dismissed Plaintiff's excessive force claim but denied the motions to dismiss as to all other claims.[20] Defendants now move for summary judgment seeking full dismissal.

## II.    LAW AND ANALYSIS

### A.  Summary Judgment Standard

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[21] This determination is made "in the light most favorable to the opposing party."[22] "When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with

---

[16] Rec. Doc. 49-12.
[17] Rec. Doc. 53-10.
[18] Rec. Doc. 1.
[19] Rec. Docs. 9, 29.
[20] Rec. Doc. 39.
[21] FED. R. CIV. P. 56(a).
[22] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).

respect to those issues on which the movant bears the burden of proof at trial."[23] If the moving party satisfies its burden, "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[24] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[25]

Notably, "[a] genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[26] All reasonable factual inferences are drawn in favor of the nonmoving party.[27] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[28] "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment."[29]

### B. Qualified Immunity

Officer Harrell, Officer Bouriaque, and Seargent Smith all assert qualified immunity as to Plaintiff's federal claims. The qualified immunity defense is a familiar one, shielding "federal and state officials from money damages unless a plaintiff pleads facts showing

---

[23] *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 333–34 (1986)).

[24] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986)).

[25] *Willis v. Roche Biomedical Lab., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

[26] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson*, 477 U.S. at 248)).

[27] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[28] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) (citing *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998)).

[29] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).

(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[30] Once qualified immunity is raised, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[31]

### C.  False Arrest

Plaintiff claims he was falsely arrested in violation of his constitutional rights under the Fourth Amendment, which guarantees "the right of the people to be secure in their persons ... against unreasonable searches and seizures ... and [that] no warrants shall issue, but upon probable cause."[32] In plain terms, "[a]n arrest is unlawful unless it is supported by probable cause."[33] Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[34] "This is necessarily a 'fact-specific ... inquiry,' and the Court has cautioned that it requires an inquiry into the specific situation confronting the public officials."[35]

The Fifth Circuit has explained:

> In the false arrest context, qualified immunity will apply "if a reasonable officer could have concluded that there was probable cause upon the facts then available to him." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001); *see Club Retro*, 568 F.3d at 204 ... Actual probable cause is not necessary; merely *arguable* probable cause is sufficient to trigger qualified immunity. *Club Retro*, 568 F.3d at 207 ("[P]laintiffs must allege facts permitting an inference that defendants

---

[30] *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[31] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).

[32] U.S. Const. amend. IV.

[33] *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004).

[34] *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001) (quoting *Spiller v. Texas City*, 130 F.3d 162, 165 (5th Cir.1997)).

[35] *Wooten v. Harrell*, No. CV 23-368, 2024 WL 1815349, at *5 (M.D. La. Apr. 25, 2024) (quoting *Torns v. City of Jackson*, 622 Fed. Appx. 414, 417 (5th Cir. 2015) (quoting, in turn, *Melear v. Spears*, 862 F.2d 1177, 1184 (5th Cir. 1989)).

lacked arguable (that is, reasonable but mistaken) probable cause for the arrests."); *see also D.C. v. Wesby*, 583 U.S. 48, 138 S. Ct. 577, 591, 199 L.Ed.2d 453 (2018).[36]

### 1. Officer Harrell

At the outset, the Court briefly addresses whether Officer Harrell placed Plaintiff under arrest within the meaning of the Fourth Amendment. Defendants did not address this question. This is a fact-specific inquiry.[37] "An arrest occurs when, 'in view of the all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"[38] Officer Harrell testified during her deposition that she placed Plaintiff in the back of her patrol car in handcuffs when she arrived on the scene.[39] Plaintiff claims that he remained confined in Officer Harrell's unit for almost an hour. At the very least, the bodycam footage reflects that Plaintiff was in Officer Harrell's unit in the motel parking lot for more than thirty-five minutes before Officer Bouriaque arrived.[40] A reasonable jury could find that a reasonable person in Plaintiff's position could "believe that [his] freedom was restrained to a degree typically associated with arrest," such that probable cause was required.[41]

Officer Harrell testified that while she was on the phone with Ashuntai, Officer Harrell heard Ashuntai blow her horn, heard Ashuntai arguing with someone, and then heard a "big thump."[42] Both parties' accounts of the incident indicate that Officer Harrell

---

[36] *Petersen v. Johnson*, 57 F.4th 225, 232 (5th Cir. 2023) (emphasis in original).

[37] *Lincoln v. Turner*, 874 F.3d 833, 841 (5th Cir. 2017).

[38] *Id.* (quoting *United States v. Massi*, 761 F.3d 512, 522 (5th Cir. 2014) (quoting, in turn, *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

[39] Rec. Doc. 53-5, pp. 18–19.

[40] Collectively, Harrell's and Smith's bodycam footage runs from 7:19 p.m. to 7:54 p.m. Rec. Docs. 49-13, 49-14.

[41] *Lincoln*, 874 F.3d at 841–42 (quoting *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007)). In *Lincoln*, the Court found that being handcuffed and placed in the back of a police car for approximately two hours could constitute an arrest for which probable cause is required. *Id.*

[42] Rec. Doc. 53-5, pp. 9–10.

detained Plaintiff almost immediately upon her arrival on the scene.[43] This is supported by Officer Harrell's deposition testimony:

> **Q.** … When you got on the scene, what happened?
>
> **A.** I got out, I told both of them to chill out. I separated both of them because they was yelling back and forth. I detained him, put him in the car, called dispatch, asked them about did they have a -- asked for an additional unit. …[44]

The Court finds that Plaintiff has established genuine issues of material fact regarding whether Officer Harrell had probable cause to arrest. Defendants have offered little argument regarding the justification for Officer Harrell's arrest of Plaintiff. At the time of Plaintiff's initial detention, Officer Harrell had not yet questioned the witness, Plaintiff's passenger. Defendants do not say whether Officer Harrell had even observed a dent in Ashuntai's car at that point. Officer Harrell also testified that she did not talk to Ashuntai about what happened.[45] Immediately after questioning Plaintiff's passenger, Officer Harrell Mirandized Plaintiff, who was already handcuffed in the patrol unit, and told him that the passenger said that Plaintiff kicked the door. The bodycam footage substantiates Plaintiff's argument that the Plaintiff's passenger did not in fact make this statement.[46] Therefore, whether Plaintiff's Fourth Amendment rights were violated due to a false arrest by Officer Harrell presents a disputed question of fact.

Proceeding to the second prong of qualified immunity, "officers are entitled to qualified immunity unless there was not probable cause for the arrest *and* a reasonable

---

[43] Rec. Doc. 49-1, p. 2; Rec. Doc. 53, p. 11.
[44] Rec. Doc. 53-5, p. 11.
[45] *Id.* at p. 22.
[46] Additionally, Defendants have offered no explanation or argument regarding Officer Harrell's apparent manual muting of her bodycam, which remained muted while Officer Harrell had a conversation with Ashuntai. *See id.*, p. 13.

officer in their position could not have concluded that there was probable cause for the arrest."[47] Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that no reasonable officer in Officer Harrell's position would have found probable cause for an arrest under these circumstances. Of particular note is the short time within which Plaintiff was arrested as well as the claim that Officer Harrell was untruthful when she told Plaintiff that his passenger told her that Plaintiff kicked the car.

Defendants unsuccessfully argue that, regardless of probable cause, Officer Harrell's treatment of Plaintiff was reasonable because of Officer Harrell's need to "deescalate the situation."[48] The Court will not consider this argument because Defendants failed to raise it in their original Motion, but only offered it in Reply.[49] Furthermore, the only evidence Defendants cite is Officer Harrell's bodycam footage, which only begins after Plaintiff had already been handcuffed and placed in the patrol car. This is insufficient to establish the absence of a genuine issue of fact regarding the circumstances leading up to the arrest.

Accordingly, the Motion will be denied as to Plaintiff's claim against Officer Harrell for false arrest.

### 2.  Officer Bouriaque

Plaintiff claims that Officer Bouriaque also lacked probable cause to arrest. According to his Incident Report, Ashuntai told Officer Bouriaque that Plaintiff kicked her

---

[47] *Wooten*, 2024 WL 1815349, at *6 (emphasis in original) (quoting *Bone v. Dunnaway*, 2015 WL 5013871, at *5 (E.D. La. Aug. 24, 2015) (quoting, in turn, *Cooper v. City of La Porte Police Dep't*, 608 F. App'x 195, 198 (5th Cir. 2015), *aff'd in part, vacated in part, remanded*, 657 F. App'x 258 (5th Cir. 2016)).
[48] Rec. Doc. 59, p. 3.
[49] In the Fifth Circuit, a district court abuses its discretion when it considers new arguments raised for the first time in a reply brief without providing the "non-movant an adequate opportunity to respond prior to a ruling." *Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022).

car and caused a "huge dent."[50] Officer Bouriaque observed the dent and estimated the damage to the door to be approximately $1,500.[51] The report reflects that Plaintiff, on the other hand, denied kicking the door to Officer Bouriaque and claimed that two black male subjects in a blue car behind Ashuntai's approached Plaintiff with a firearm.[52] Officer Bouriaque wrote in his report that although Plaintiff denied kicking the car, Plaintiff "could not advise how the large dent … had gotten there in the first place."[53] After questioning Ashuntai and Plaintiff, Officer Bouriaque advised Plaintiff that he was under arrest for Simple Criminal Damage to Property, and he was booked into East Baton Rouge Parish Prison.[54] In their respective depositions, both Officer Bouriaque and Seargent Smith testified that they observed the dent in Ashuntai's car door.[55]

Plaintiff argues that whether he kicked Ashuntai's car is a genuine issue of fact precluding summary judgment.[56] However, the Court finds that even if Plaintiff did not in fact kick the car, Officer Bouriaque had probable cause to believe that Plaintiff caused the damage to Ashuntai's vehicle. The Fifth Circuit has elaborated on the standard for probable cause as follows:

> "The probable cause issue must be analyzed under the 'totality of the circumstances' as to whether there is a 'fair probability' that a crime occurr[ed]." *United States v. Antone,* 753 F.2d 1301, 1304 (5th Cir.1985) (quoting *Illinois v. Gates,* 462 U.S. 213[, ] (1983)). … A "fair probability" does not mean that a reasonable official would have thought it more likely than not that the defendant committed a felony. Although the "fair probability" must certainly be more than a bare suspicion, our court has rejected the notion that the government must show that a reasonable person would have thought, by a

---

[50] Rec. Doc. 49-7, p. 2.
[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] Rec. Doc. 53-6, p. 17; Rec. Doc. 53-12, p. 25.
[56] Rec. Doc. 53, p. 13.

> preponderance of the evidence, that a defendant committed a crime. In short, the requisite "fair probability" is something more than a bare suspicion, but need not reach the fifty percent mark.[57]

Moreover, "decisions have recognized that it is immaterial to the probable cause determination whether a plaintiff actually committed the crime. 'The Constitution does not guarantee that only the guilty will be arrested.'"[58]

The record reflects that Officer Bouriaque questioned both Ashuntai and Plaintiff and chose to credit Ashuntai's version of the events. Courts have noted that in determining probable cause, "[a]n officer is [ ] entitled to credit eyewitness statements and disbelieve a suspect's denial of those statements."[59] Further, based on his own observations, Officer Bouriaque testified that the dent was approximately the size of a work boot and did not appear to be caused by a motor vehicle accident.[60] He also testified that based on his experience, the damage looked "fresh" as it had not been affected by weather.[61] Plaintiff argues that Officer Bouriaque's investigation was inadequate; for example, Officer Bouriaque neglected to measure Plaintiff's boot and compare it to the size of the dent.[62] Officer Bouriaque acknowledged that observing Plaintiff's boots and comparing the size and print to the dent would have been a sensible investigative step.[63] Additionally, the Court agrees with Plaintiff that Plaintiff's inability to "explain how the dent

---

[57] *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (cleaned up) (citing *United States v. Adcock,* 756 F.2d 346, 347 (5th Cir.1985) (per curium); *Brinegar v. United States,* 338 U.S. 160, 175 (1949)).

[58] *Huck v. City of Shreveport*, No. 24-CV-1796, 2025 WL 1911410, at *3 (W.D. La. June 25, 2025), *report and recommendation adopted*, No. 24-CV-1796, 2025 WL 1908978 (W.D. La. July 10, 2025) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

[59] *See id.* at *3 (citing *Cooper*, 608 Fed. Appx. at 200). The court continued: "Put another way, 'an arresting officer is entitled to credit some evidence, while disbelieving the arrestee's version of events.'" *Id.* (quoting *Loftin v. City of Prentiss, Mississippi*, 2021 WL 3179309, *2 (S.D. Miss. 2021) (collecting cases with conflicting witness statements where probable cause was found)).

[60] Rec. Doc. 53-6, pp. 18–19.

[61] *Id.* at pp. 23–24.

[62] *Id.* at p. 30.

[63] *Id.* at p. 24.

got there in the first place" is not evidence that Plaintiff made the dent.[64] However, whether or not Plaintiff actually did kick the car, the Court finds that Officer Bouriaque's observation of the damage coupled with Ashuntai's statements gave rise to a fair probability that Plaintiff caused the dent. There is also no evidence that Officer Bouriaque's determination that the damage exceeded the felony threshold under La. R.S. 14:56 was without reasonable support.[65] The Court finds the current record sufficient to establish Officer Bouriaque had probable cause.

Even if there were no probable cause, the Court finds that Officer Bouriaque would still be entitled to qualified immunity (under the second prong) because he at least had *arguable* probable cause to believe that Plaintiff caused the damage to Ashuntai's vehicle. Plaintiff has failed to show that no reasonable officer in Officer Bouriaque's position could have concluded that there was probable cause "upon the facts then available to him."[66]

Plaintiff further highlights the lack of bodycam footage from Officer Bouriaque, arguing that the absence of video capturing the interview with Ashuntai or depicting the dent itself precludes summary judgment.[67] However, this does not change the Court's conclusion: regardless of whether Plaintiff kicked the car, the evidence on record indicates that Officer Bouriaque had sufficient information to supply at least arguable probable cause, which is all that is needed for qualified immunity to attach.[68] The absence of

---

[64] *Id.* at p. 20.
[65] Officer Bouriaque testified that he conducted internet research to estimate the damage based on the type and newness of the vehicle. Rec. Doc. 49-6, p. 20.
[66] *Petersen*, 57 F.4th at 232 (quoting *Brown*, 243 F.3d at 190).
[67] Rec. Doc. 53, p. 14.
[68] *Petersen*, 57 F.4th at 232 (citations omitted).

bodycam footage from Officer Bouriaque does not create an issue of fact as to probable cause.[69]

Finally, Plaintiff argues that the colloquy between Officer Bouriaque and Seargent Smith is proof that they "knew there was not a crime committed to compel arrest and conspired to falsely arrest and jail Plaintiff."[70] Again, the following exchange occurred when Seargent Smith arrived:

> **Officer Bouriaque**: "It's a misdemeanor."
>
> **Seargent Smith**: "You can put him in jail for that if you want to, that's up to you though."
>
> **Officer Bouriaque**: "I don't think they'll take him for simple criminal damage to property."
>
> **Seargent Smith**: "I'm pretty sure you can find a way."[71]

During his deposition, Officer Bouriaque agreed that Plaintiff would likely not go to jail for a misdemeanor damage charge, and "[t]he only way he could go to jail is if it was ratcheted up to a felony[.]"[72] But the Court finds that Plaintiff has failed to produce evidence to support his claim that this was a conspiracy to falsely arrest Plaintiff. Officer Bouriaque testified that, at first, he believed the offense was only a misdemeanor.[73] However, he further explained that as the investigation proceeded, he realized that the car was relatively new, which resulted in a higher damage estimate.[74] After his investigation, he concluded that the damage was about $1,500, which exceeded the

---

[69] Officer Bouriaque testified in his deposition that the loss of footage was unintentional and likely due to a software malfunction. Rec. Doc. 53-6, pp. 15–16, 29.
[70] Rec. Doc. 53, p. 14.
[71] Rec. Doc. 49-14.
[72] Rec. Doc. 53-6, p. 28.
[73] *Id.* at pp. 26–27.
[74] *Id.* at pp. 33–34.

threshold for a felony charge.[75] As the Court has explained, Officer Bouriaque's investigation was sufficient to establish probable cause. The conversation between Officer Bouriaque and Seargent Smith does not raise a genuine issue of material fact with respect to probable cause.

Accordingly, Officer Bouriaque is entitled to summary judgment, and the claim for false arrest will be dismissed.

### 3.  Seargent Smith

Plaintiff's claim against Seargent Smith is based entirely on Seargent Smith's comment to Officer Bouriaque that he was "pretty sure" Officer Bouriaque could "find a way" to charge and book Plaintiff. During examination by Plaintiff's counsel, Seargent Smith testified during his deposition that he made this comment in jest:

> **A.** … When I got there and stepped out the car and I was listening to -- I'm like, hey man, what you got, and then he [Officer Bouriaque] started telling me what he had. So he started saying, well, the guy kicked the car, it's a misdemeanor, I don't think he could book him. So I sarcastically said, I'm pretty sure that you could find a way. And I only said that because Bouriaque arrests people every day. All day, every day. He either writing tickets or summons. Then a lot of his stuff that he turn in, you know, I got to correct or kick back or something like that. So when I made the statement, I was only being sarcastic because he arrests people every day. He come to work every day and he arrests every day, every day, every day, every day. So when I made the statement, I only made it sarcastically.
>
> **Q.** It was just a joke. He wasn't supposed to take it seriously.
>
> **A.** Correct. Correct. It was just a sarcastic joke because he's just –
>
> **Q.** Gung ho.
>
> **A.** Correct. That's a good way to say it.

---

[75] *Id.*

…

**Q.** But in this situation, you didn't really mean for him to find a way to put Mr. Wooten in jail, did you?

**A.** No, I didn't.

**Q.** It was just a joke; right?

**A.** It was just a joke because every day I come to work, he got a bunch of people he done arrest or a bunch of stuff that I got to do for him.[76]

Other than the comment to Officer Bouriaque, Plaintiff has cited no additional evidence of anything Seargent Smith did in connection with Plaintiff's arrest. Plaintiff has pointed to no evidence tending to show that Seargent Smith made the comment with the intent to put Plaintiff in jail without probable cause. Seargent Smith's comment alone is not sufficient to support a claim for false arrest, and Plaintiff's theory rests on speculation in this regard.[77] Accordingly, Plaintiff has failed to make a sufficient showing of a constitutional violation, and Seargent Smith is entitled to summary judgment on the false arrest claim under the first prong of qualified immunity.[78]

### D.  Due Process Claim for Fabrication of Evidence

In its prior Ruling, the Court stated that Plaintiff brought a due process claim for fabrication of evidence by alleging that "all three police [officers] team[ed] up to fabricate a felony to jail Wooten and punish him for yelling at a police officer's relative."[79] The Court found that the claim survived dismissal at the Rule 12(b)(6) stage because the

---

[76] Rec. Doc. 53-12, pp. 22–23.
[77] "A non-movant will not avoid summary judgment by presenting speculation, improbable inferences, or unsubstantiated assertions." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019).
[78] *See Bryant v. Gillem*, 965 F.3d 387, 393 (5th Cir. 2020) ("Because [Plaintiff] has failed to show a violation of any Fourth Amendment rights, we need not consider the second qualified-immunity prong.").
[79] *Wooten*, 2024 WL 1815349, at *8 (quoting Rec. Doc. 1, ¶ 17).

Defendants failed to address the claim in their motion.[80] Inexplicably, in their briefing on the pending Motion for Summary Judgment, Defendants again failed to mention this claim.

As to this claim, Plaintiff argues "a reasonable jury could find that a conspiracy existed to arrest Plaintiff [ ] despite the absence of probable cause."[81] More specifically, Plaintiff argues that "Officer Bouriaque and Officer Smith conspired to elevate the alleged offense to a felony so that he could be jailed."[82] In support, Plaintiff relies on Officer Bouriaque's testimony regarding Sergent Smith's comment that he could "find a way" to put Plaintiff in jail, as well as Seargent Smith's testimony that Officer Bouriaque often makes arrest that need to be "corrected" or "kicked back."[83]

"Generally, 'a district court may not grant summary judgment *sua sponte* on grounds not requested by the moving party.'"[84] But in this case, the Court finds Plaintiff's purported due process claim for "fabrication of evidence" to be indistinguishable from the false arrest claims against Officer Bouriaque and Seargent Smith. As discussed in relation to the false arrest claims, Plaintiff has failed to produce evidence showing that Officer Bouriaque or Seargent Smith arrested Plaintiff without a reasonable belief that probable cause existed. Because Plaintiff's due process claim rests on the theory that "a conspiracy existed to arrest Plaintiff [ ] despite the absence of probable cause,"[85] the Court finds this claim should be dismissed on qualified immunity grounds for the same reasons as the

---

[80] *Id.*
[81] Rec. Doc. 53, p. 9.
[82] *Id.* at pp. 10–11.
[83] *Id.* at pp. 8–11.
[84] *Lozano v. Ocwen Fed. Bank, FSB,* 489 F.3d 636, 641 (5th Cir. 2007) (quoting *Baker v. Metro. Life Ins. Co.,* 364 F.3d 624, 632 (5th Cir. 2004) (quoting, in turn, *John Deere Co. v. Am. Nat'l Bank,* 809 F.2d 1190, 1192 (5th Cir. 1987)).
[85] Rec. Doc. 53, p. 8.

false arrest claims against Officer Bouriaque and Seargent Smith. Furthermore, Seargent Smith's testimony regarding Officer Bouriaque's frequent arrests which sometimes need to be "corrected" does not, without more, show that he conspired to falsely arrest Plaintiff on this occasion.

The concern behind granting summary judgment as to a claim not specifically mentioned by the movant is that the adverse party does not have notice and an opportunity to argue.[86] But in this case, Plaintiff addressed the fabrication of evidence claim at length in his Opposition brief.[87] Therefore, and because of the congruency of the arguments, facts, and evidence with the false arrest claims, the Court will dismiss the fabrication of evidence claim against Officer Bouriaque and Seargent Smith. And because of the lack of evidence as to Officer Bouriaque and Seargent Smith, Plaintiff's allegation that "all three police [officers] team[ed] up to fabricate a felony to jail Wooten and punish him for yelling at a police officer's relative"[88] also lacks merit as to Officer Harrell.

Accordingly, Plaintiff's due process claim for fabrication of evidence will be dismissed.

### E. Malicious Prosecution

For a Fourth Amendment malicious prosecution claim, a plaintiff must prove: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original

---

[86] *See Judwin Props., Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 436–37 (5th Cir. 1992) (citing *NL Industries, Inc. v. GHR Energy Corp.,* 940 F.2d 957, 965 (5th Cir. 1991)).
[87] Rec. Doc. 53, pp. 7–11.
[88] Rec. Doc. 1, ¶ 17.

proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.[89]

Defendants' sole argument for dismissal of the malicious prosecution claim is that there was probable cause to arrest Plaintiff.[90] In analyzing the false arrest claim, the Court found that Plaintiff has established genuine issues of fact regarding whether Officer Harrell had probable cause. Therefore, Plaintiff's malicious prosecution claim against Officer Harrell survives summary judgment.

However, the Court has found that Officer Bouriaque had probable cause to arrest Plaintiff. Therefore, Officer Bouriaque is entitled to qualified immunity on the malicious prosecution claim as well.[91]

As to Seargent Smith, again, Plaintiff has not produced evidence demonstrating that Seargent Smith was engaged in a plan to have Plaintiff arrested despite knowing there was no probable cause. Therefore, the claim against Seargent Smith for malicious prosecution will be dismissed.

### F. State Law Claims

#### 1. Malicious Prosecution

The elements of a malicious prosecution claim under federal and Louisiana state law are coextensive.[92] For the same reasons explained in connection with the federal claim, the Court grants the Motion for Summary Judgment as to Officer Bouriaque and Seargent Smith, but denies the Motion as to Officer Harrell.

---

[89] *Wooten*, 2024 WL 1815349, at *7 (quoting *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)).
[90] Rec. Doc. 49-1, pp. 14–15.
[91] *See Brown*, 243 F.3d at 190 (granting qualified immunity on malicious prosecution claim where arguable probable cause existed).
[92] *Wooten*, 2024 WL 1815349, at *7 (citing *Armstrong*, 60 F.4th at 279).

### 2. Defamation

"Under Louisiana law a plaintiff must show four elements to prove defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged communication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[93]

Defendants assert they are entitled to a qualified privilege, which is a defense to a defamation action under Louisiana law.[94] When "there is probable cause for [an] arrest, Louisiana law affords police officers a qualified privilege against defamation actions related to reports of the arrest and the charges on which the arrest was based."[95] Because Plaintiff has failed raise an issue of material fact regarding whether Officer Bouriaque and Seargent Smith arrested him without probable cause, the Court finds that the defamation claims against those defendants should be dismissed due to qualified privilege. However, because there are issues of fact regarding Officer Harrell's probable cause, this argument does not entitle Officer Harrell to qualified privilege.

Aside from probable cause, Defendants argue that "nothing regarding the statements within the paperwork surrounding Plaintiff's arrest are alleged to be false or inaccurate," and "the fact of publication lies with the media, and not the defendants."[96] Due to the lack of elaboration and the absence of citations to evidence or caselaw to support these arguments, the Court will deny summary judgment on the defamation claim against Officer Harrell.

---

[93] *Id.* at *8 (quoting *Bellard v. Gautreaux*, 675 F.3d 454, 464 (5th Cir. 2012) (citing *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004)).

[94] *Kennedy v. Sheriff of E. Baton Rouge*, 2005-1418 (La. 7/10/06), 935 So. 2d 669, 681.

[95] *Wooten*, 2024 WL 1815349, at *8 (quoting *Robertson v. City of Shreveport*, 2018 WL 1769373, at *3 (W.D. La. Apr. 12, 2018) (citing *Thorn v. McGary*, 684 Fed. Appx. 430, 435 (5th Cir. 2017)).

[96] Rec. Doc. 49-1, p. 14.

### 3.  Vicarious Liability

Defendants did not mention the potential vicarious liability of the City/Parish in their Motion. Accordingly, and because claims remain against the individual Defendants, the claim against the City/Parish remains.

## III.     CONCLUSION

For the foregoing reasons, the Motion[97] is GRANTED IN PART and DENIED IN PART.

The Motion is GRANTED with respect to the following claims, which are hereby dismissed with prejudice: Plaintiff's claims for false arrest against Officer Bouriaque and Seargent Smith; Plaintiff's claims for malicious prosecution (under both federal and Louisiana law) against Officer Bouriaque and Seargent Smith; Plaintiff's due process claims for fabrication of evidence against Officer Harrell, Officer Bouriaque, and Seargent Smith; and Plaintiff's claims for defamation against Officer Bouriaque and Seargent Smith.

The Motion is otherwise DENIED as to all other claims, including: Plaintiff's claims for false arrest, malicious prosecution (under both federal and Louisiana law), and defamation against Officer Harrell; and Plaintiff's claim against the City/Parish for vicarious liability.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this __4th__ day of ____February____, 2026.

_Shelly D. Dick_

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[97] Rec. Doc. 49.